## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT,<br><br>             Plaintiff,<br><br>     v.<br><br>ALEXION PHARMACEUTICALS, INC.,<br>DAVID R. BRENNAN, JOHN T. MOLLEN,<br>CHRISTOPHER J. COUGHLIN, FRANCOIS<br>NADER, DEBORAH DUNSIRE, JUDITH A.<br>REINSDORF, PAUL A. FRIEDMAN,<br>ANDREAS RUMMELT, and LUDWIG N.<br>HANTSON,<br><br>             Defendants. | ) <br> ) <br> ) Case No._____ <br> ) <br> ) <br> ) **COMPLAINT FOR VIOLATIONS OF** <br> ) **THE FEDERAL SECURITIES LAWS** <br> ) <br> ) JURY TRIAL DEMANDED <br> ) <br> ) <br> ) <br> ) <br> ) |

Plaintiff Michael Kent ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Alexion Pharmaceuticals, Inc. ("Alexion" or the "Company") and the members of Alexion's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  By the Action, Plaintiff seeks to enjoin the vote on a proposed transaction, pursuant to which Alexion will be acquired by AstraZeneca PLC ("AstraZeneca") through Delta Omega Sub Holdings Inc. ("Bidco"), Delta Omega Sub

Holdings Inc. 1 ("Merger Sub I"), and Delta Omega Sub Holdings LLC 2 ("Merger Sub II") (the "Proposed Transaction").[1]

2.      On December 12, 2020, Alexion and AstraZeneca jointly announced their entry into an Agreement and Plan of Merger dated December 12, 2020 (the "Merger Agreement") to sell Alexion to AstraZeneca.  Under the terms of the Merger Agreement, each Alexion stockholder will receive (i) 2.1243 (the "exchange ratio") American depositary shares of AstraZeneca ("AstraZeneca ADSs") (or, at their election, a number of ordinary shares of AstraZeneca equal to the number of underlying ordinary shares represented by such 2.1243 AstraZeneca ADSs); and (ii) $60 in cash for each share of Alexion common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $39 billion.

3.      On February 19, 2021, AstraZeneca filed a Form F-4 Registration Statement (the "Registration Statement") with the SEC.  The Registration Statement, which recommends that Alexion stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (a) Alexion's and AstraZeneca's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, BofA Securities, Inc. ("BofA"); and (b) Company insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as

---

[1] Non-party AstraZeneca is a public limited company incorporated in England and Wales whose shares trade on the NASDAQ Global Select Market under the ticker symbol "AZN." Non-party Bidco is a Delaware corporation and a direct wholly owned subsidiary of AstraZeneca.  Non-party Merger Sub I is a Delaware corporation and a direct wholly owned subsidiary of Bidco.  Non-party Merger Sub II is a Delaware limited liability company and a direct wholly owned subsidiary of Bidco.

Alexion stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.      It is imperative that the material information omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Alexion.

10.      Defendant Alexion is a Delaware corporation, with its principal executive offices located at 121 Seaport Boulevard, Boston, Massachusetts 02210.   Alexion's shares trade on the NASDAQ Global Select Market under the ticker symbol "ALXN."

11.      Defendant David R. Brennan ("Brennan") is Chairman of Alexion's Board and has been a director of the Company since July 2014.  Defendant Brennan previously served as Interim Chief Executive Officer ("CEO") of the Company from December 2016 to March 2017. Defendant Brennan also previously served as CEO and Executive Director of AstraZeneca from 1996 to 2012.

12.      Defendant John T. Mollen ("Mollen") is and has been a director of the Company since April 2014.

13.      Defendant Christopher J. Coughlin ("Coughlin") is and has been a director of the Company since July 2014.

14.      Defendant Francois Nader ("Nader") is and has been a director of the Company since November 2017.

15.      Defendant Deborah Dunsire ("Dunsire") is and has been a director of the Company since January 2018.

16.      Defendant Judith A. Reinsdorf ("Reinsdorf") is and has been a director of the Company since February 2018.

17.      Defendant Paul A. Friedman ("Friedman") is and has been a director of the Company since September 2017.

4

18.     Defendant Andreas Rummelt ("Rummelt") is and has been a director of the Company since February 2010.

19.     Defendant Ludwig Hantson ("Hantson") is and has been CEO of the Company since March 27, 2017 and a director since 2017.

20.     As noted above, the defendants identified in paragraphs 11-19 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21.     On December 12, 2020, Alexion and AstraZeneca jointly announced in relevant part:

> CAMBRIDGE, England & BOSTON--AstraZeneca and Alexion Pharmaceuticals, Inc. (Alexion) have entered into a definitive agreement for AstraZeneca to acquire Alexion.
>
> Alexion shareholders will receive $60 in cash and 2.1243 AstraZeneca American Depositary Shares (ADSs) (each ADS representing one-half of one (1/2) ordinary share of AstraZeneca, as evidenced by American Depositary Receipts (ADRs)) for each Alexion share.  Based on AstraZeneca's reference average ADR price of $54.14, this implies total consideration to Alexion shareholders of $39bn or $175 per share.
>
> The boards of directors of both companies have unanimously approved the acquisition.  Subject to receipt of regulatory clearances and approval by shareholders of both companies, the acquisition is expected to close in Q3 2021, and upon completion, Alexion shareholders will own c.15% of the combined company.
>
> Pascal Soriot, Chief Executive Officer, AstraZeneca, said: "Alexion has established itself as a leader in complement biology, bringing life-changing benefits to patients with rare diseases.  This acquisition allows us to enhance our presence in immunology.  We look forward to welcoming our new colleagues at Alexion so that we can together build on our combined expertise in immunology and precision medicines to drive innovation that delivers life-changing medicines for more patients."

Ludwig Hantson, Ph.D., Chief Executive Officer, Alexion, said: "For nearly 30 years Alexion has worked to develop and deliver transformative medicines to patients around the world with rare and devastating diseases. I am incredibly proud of what our organisation has accomplished and am grateful to our employees for their contributions. This transaction marks the start of an exciting new chapter for Alexion. We bring to AstraZeneca a strong portfolio, innovative rare disease pipeline, a talented global workforce and strong manufacturing capabilities in biologics. We remain committed to continuing to serve the patients who rely on our medicines and firmly believe the combined organisation will be well positioned to accelerate innovation and deliver enhanced value for our shareholders, patients and the rare disease communities."

**Strategic rationale**

Both companies share the same dedication to science and innovation to deliver life-changing medicines. The capabilities of both organisations will create a company with great strengths across a range of technology platforms, with the ability to bring innovative medicines to millions of people worldwide. The combined company will also have an enhanced global footprint and broad coverage across primary, speciality and highly specialised care.

Scientific leadership - accelerated presence in immunology

AstraZeneca has built a growing scientific presence in oncology, and in cardiovascular, renal and metabolism, and respiratory diseases, with a focus on organ protection. AstraZeneca has developed a broad range of technologies, initially focused on small molecules and biologics and with a growing focus in precision medicine, genomics, oligonucleotides and epigenetics. More recently, AstraZeneca has increased its efforts in immunology research and the development of medicines for immune-mediated diseases.

Alexion has pioneered complement inhibition for a broad spectrum of immune-mediated rare diseases caused by uncontrolled activation of the complement system, a vital part of the immune system. Alexion's franchise includes Soliris (eculizumab), a first-in-class anti-complement component 5 (C5) monoclonal antibody. The medicine is approved in many countries for the treatment of patients with paroxysmal nocturnal haemoglobinuria (PNH), atypical haemolytic uremic syndrome, generalized myasthenia gravis and neuromyelitis optica spectrum disorder. More recently, Alexion launched Ultomiris (ravulizumab), a second-generation C5 monoclonal antibody with a more convenient dosing regimen.

Alexion's immunology expertise extends to other targets in the complement cascade beyond C5 as well as additional modalities, with its deep pipeline including Factor D small-molecule inhibitors of the alternative pathway of the complement system, an antibody blocking neonatal Fc receptor (FcRn)-mediated recycling, and

a bi-specific mini-body targeting C5, among others.  The FcRn extends the half-life and hence the availability of pathogenic immunoglobulin G (IgG) antibodies.

AstraZeneca, with Alexion's R&D team, will work to build on Alexion's pipeline of 11 molecules across more than 20 clinical-development programmes across the spectrum of indications, in rare diseases and beyond.

Alexion's leading expertise in complement biology will accelerate AstraZeneca's growing presence in immunology.  The acquisition adds a new technology platform to AstraZeneca's science and innovation-driven strategy.  The complement cascade is pivotal to the innate immune system.  It plays a crucial role in many inflammatory and autoimmune diseases across multiple therapy areas, including haematology, nephrology, neurology, metabolic disorders, cardiology, ophthalmology and acute care.  In contrast, AstraZeneca's capabilities in genomics, precision medicine and oligonucleotides can be leveraged to develop medicines targeting less-frequent diseases.   Combining AstraZeneca's capabilities in precision medicine and Alexion's expertise in rare-disease development and commercialisation will enable the new company to develop a portfolio of medicines addressing the large unmet needs of patients suffering from rare diseases.

The combined companies will bring together two rapidly converging, patient-centric models of care delivery with combined strengths in immunology, biologics, genomics and oligonucleotides to drive future medicine innovation.  AstraZeneca intends to establish Boston, Massachusetts, US as its headquarters for rare diseases, capitalising on talent in the greater Boston area.

Industry-leading revenue growth; enhanced geographical presence and broad coverage across primary, specialised and highly specialised care

AstraZeneca's acquisition of Alexion, with its strong commercial portfolio and robust pipeline, will support its long-term ambition to develop novel medicines in areas of immunology with high unmet medical needs.  Alexion achieved impressive revenue growth over the last few years, with revenues of $5.0bn in 2019 (21% year-on-year growth).  Alexion has exhibited skilful commercial execution in building its 'blockbuster' C5 franchise.  The success of the franchise is demonstrated by the effective transition of over 70% of PNH patients from Soliris to Ultomiris in less than two years of launch in its key markets, including the US, Japan and Germany, as well as the strong pipeline of additional indications for Ultomiris.

Rare diseases is a high-growth therapy area with rapid innovation and significant unmet medical need.  Over 7,000 rare diseases are known today, and only c.5% have US Food and Drug Administration-approved treatments.  The global rare disease market is forecasted to grow by a low double digit percentage in the future.2

AstraZeneca intends to build on its geographical footprint and extensive emerging markets presence to accelerate the worldwide expansion of Alexion's portfolio.

The two companies have been on converging paths, AstraZeneca expanding its presence from primary to speciality care, whereas Alexion has been progressing from ultra-orphan to orphan and speciality conditions.

The acquisition strengthens AstraZeneca's industry-leading growth, underpinned by its broad portfolio of medicines, which will enable the new company to bring innovative medicines to a broad range of healthcare practitioners in primary, speciality and highly specialised care.

The combined company is expected to deliver double-digit average annual revenue growth through 2025.

**Financial benefits**

<u>Enhanced revenue growth, operating margin and cash-flow generation</u>

The acquisition is expected to improve the combined Group's profitability, with the core operating margin significantly enhanced in the short term, and with continued expansion thereafter.  This uplift is supported by increased scale and expected recurring run-rate pre-tax synergies of c.$500m per year from the combined Group (by end of the third year following completion of the acquisition).  AstraZeneca expects to generate significant value from the acquisition by extending Alexion's commercial reach through leveraging AstraZeneca's global presence and accelerating the development of Alexion's pipeline.

The acquisition also strengthens AstraZeneca's cash-flow generation, providing additional flexibility to reinvest in R&D and rapid debt reduction, with an ambition to increase the dividend.

<u>Immediately earnings-accretive and value-enhancing acquisition, in line with stated capital-allocation priorities</u>

The acquisition is expected to deliver robust and sustainable accretion to AstraZeneca's core earnings per share (EPS) from the outset, with double-digit percentage accretion anticipated in the first three years following the completion of the acquisition.

The acquisition of Alexion is consistent with AstraZeneca's capital-allocation priorities.  The combined company is expected to maintain a strong, investment-grade credit rating, and the acquisition supports AstraZeneca's progressive dividend policy.  The combination represents a significant step in AstraZeneca's strategic and financial-growth plans.

***

**Details of the acquisition**

Key terms

The acquisition will be undertaken through a US statutory merger in which Alexion shareholders will receive $60 in cash and 2.1243 new AstraZeneca ADSs listed on the Nasdaq exchange for each of their Alexion shares. The cash and ADS consideration represents an c.45% premium to Alexion shareholders based on the closing stock price of Alexion on 11 December 2020 and a c.43% premium, based on the 30-day volume-weighted average closing stock price of $122.04 before this announcement. If they elect, Alexion shareholders may receive their allocation of AstraZeneca ADSs in the form of a corresponding number of ordinary shares of AstraZeneca in addition to the cash consideration.

Based on AstraZeneca's reference average ADR price of $54.14, this implies total consideration to Alexion shareholders of $39bn or $175 per share.

Financing

To support the financing of the offer consideration, AstraZeneca has entered into a new committed $17.5bn bridge-financing facility, provided by Morgan Stanley, J.P. Morgan Securities plc and Goldman Sachs. The bridge-financing facility is available for an initial term of 12 months from the earlier of the date of completion of the acquisition and 12 December 2021 with up to two six-month extensions available at the discretion of AstraZeneca. The initial bridge financing facility is intended to cover the financing of the cash portion of the acquisition consideration and associated acquisition costs and to refinance the existing term loan and revolving credit facilities of Alexion. In due course, AstraZeneca intends to refinance the initial bridge-financing facility through a combination of new medium-term bank loan facilities, debt-capital market issuances and business cash flows.

The acquisition is expected to significantly enhance cash generation, which will support rapid debt reduction and overall deleveraging. AstraZeneca remains committed to maintaining a strong investment-grade credit rating. The dividend policy remains unchanged with a commitment to a progressive dividend policy; dividend cover is expected to be materially enhanced as a result of the acquisition.

Further information on synergies

The acquisition is expected to realise recurring run-rate pre-tax synergies of c.$500m per year from the combined Group, generated from commercial and manufacturing efficiencies as well as savings in central costs, with full run-rate expected to be achieved by end of the third year following completion of the acquisition.

To realise the total synergies, AstraZeneca expects to incur one-time cash costs of c.$650m, during the first three years following completion.

<u>Management and employees</u>

Members of Alexion's current senior management team will lead the future rare-disease activities.  Under the terms of the acquisition agreement, AstraZeneca has agreed that for 12 months following closing, it will provide the Alexion employees with the same level of salary as such employees had before closing, incentive compensation opportunities that are in the aggregate no less favourable than those provided before closing and substantially comparable benefits to those provided before closing.

<u>Governance</u>

The companies will mutually agree on two individuals from the Alexion board of directors who will join the AstraZeneca board as directors upon closing of the acquisition.

<u>Closing conditions</u>

Closing of the acquisition is subject to approval by AstraZeneca and Alexion shareholders, certain regulatory approvals, approval of the new AstraZeneca shares for listing with the Financial Conduct Authority and to trading on the London Stock Exchange, and other customary closing conditions.

The acquisition is a Class 1 transaction for AstraZeneca and as such, will require the approval of its shareholders to comply with the UK Listing Rules.  A shareholder circular, together with notice of the relevant shareholder meeting, will be distributed to shareholders in the first half of 2021.  The Alexion proxy statement is also expected to be published in the first half of 2021.

Subject to the satisfaction of the closing conditions to the proposed acquisition, the companies expect the acquisition to close in Q3 2021.

<u>Termination</u>

The acquisition terms provide that Alexion will be liable to pay a break fee of up to $1.2bn to AstraZeneca in certain specified circumstances (including a change of Alexion's board recommendation or completion of an alternative acquisition).  AstraZeneca will also be required to pay Alexion a break fee of $1.4bn in certain specified circumstances, including a change of AstraZeneca's board recommendation.

<u>Recommendation</u>

The boards of directors of both Alexion and AstraZeneca have unanimously approved the proposed acquisition and resolved to recommend that their respective shareholders vote in favour of it.

**The Registration Statement Contains Material Misstatements and Omissions**

22.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Alexion's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

23.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) Alexion's and AstraZeneca's financial projections and the data and inputs underlying the financial analyses performed by the Company's financial advisor BofA; and (b) Company insiders' potential conflicts of interest.  Accordingly, Alexion stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

***Material Omissions Concerning Alexion's and AstraZeneca's Financial Projections and BofA's Financial Analyses***

24.     The Registration Statement fails to disclose material information concerning the Company's and AstraZeneca's financial projections.

25.     First, the Registration Statement includes a description of Company management's unaudited probability of technical and regulatory success ("PTRS") Alexion projections.  That description, however, is materially incomplete in that omits the line items underlying the calculation of non-GAAP operating income (post-stock-based compensation expense ("SBC")), tax-effected EBIT, unlevered free cash flow and non-GAAP EPS (pre-SBC).

26.     Similarly, the Registration Statement fails to disclose all line items underlying the calculation of operating profit and non-GAAP net income with respect to the unaudited non-PTRS Alexion projections.

27.     Next, the Registration Statement fails to disclose all line items underlying the calculation of core EBIT, unlevered free cash flow, and core EPS associated with respect to the Alexion management unaudited AstraZeneca projections,

28.     As reflected in the Registration Statement, BofA provided a fairness opinion in support of the Proposed Transaction.  In reaching their conclusion, BofA preformed various financial analyses which are partially described in the Registration Statement.  That description can The Registration Statement also describes BofA's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of BofA's fairness opinion is incomplete in numerous, material ways including a failure to disclose key inputs and assumptions underlying these analyses.  The absence of this information precludes Alexion's public stockholders are from fully assessing and understanding these analyses.  This, in turn, precludes them from determining what weight, if any, to place on BofA's fairness opinion in connection with their decision to vote in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to Alexion's stockholders.

29.     First, with respect to BofA's *Selected Publicly Traded Companies Analysis* of Alexion, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the companies analyzed.

30.     Similarly, the Registration Statement fails to disclose: (a) Alexion's calendar year 2021 EBITDA (unburdened by stock-based compensation); and (b) the individual multiples and

financial metrics for each of the transactions analyzed in BofA's *Selected Precedent Transactions Analysis* of Alexion.

31.     The disclosure shortfalls in the Registration Statement might be most stark in connection with BofA's *Discounted Cash Flow Analysis* of Alexion – which is arguably one of the most important for stockholders to consider.  In that regard, the Registration Statement fails to disclose: (a) of the inputs and assumptions underlying the discount rates ranging from 7.0% to 9.5%; (b) Alexion management's basis for assuming no cash flows and terminal value beyond 2040; (c) the Company's net debt as of September 30, 2020; and (c) the number of fully-diluted shares of the Company's common stock outstanding.

32.     With respect to BofA's *Wall Street Analysts Price Targets* analysis of Alexion, the Registration Statement fails to disclose: (a) the individual price targets observed; and (b) the sources thereof.

33.     In addition, the Registration Statement omits: (a) the transactions observed; and (b) the individual premiums for each transaction utilized in connection with BofA's *Premia Paid Analysis* of Alexion.

34.     And, regarding BofA's *Selected Publicly Traded Companies Analysis* of AstraZeneca, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the companies analyzed.

35.     BofA also performed as *Discounted Cash Flow Analysis* of AstraZeneca.  Given that the consideration offered in the Proposed Transaction AstraZeneca ADSs, this analysis takes on increased importance as well.  That fact notwithstanding, the Registration Statement fails to disclose: (a) the terminal year cash flows used in the analysis; (b) quantification of the terminal value of AstraZeneca; (c) the inputs and assumptions underlying the discount rates ranging from

6.0% to 7.5% (d) AstraZeneca's net debt as of September 30, 2020; and (e) the number of fully-diluted AstraZeneca ordinary shares outstanding.

36.     With respect to BofA's *Wall Street Analysts Price Targets* analysis of AstraZeneca, the Registration Statement fails to disclose: (a) the individual price targets observed; and (a) the sources thereof.

37.     With respect to BofA's *Has/Gets Analysis*, the Registration Statement fails to disclose: (a) quantification of the inputs and assumptions underlying the discount rate range of 7.0% to 9.5%; and (b) Alexion management's basis for assuming no terminal value for the cost-synergies beyond 2040.

38.      The omission of this information renders the statements in the "Alexion Unaudited Prospective Financial Information" and "Opinion of Alexion's Financial Advisor" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

39.     The Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by Alexion insiders.

40.     For example, the Registration Statement sets forth at page 83 that Company executive officers may come to be employed by AstraZeneca.  Notwithstanding this critical admission, the Registration Statement fails to disclose whether any of Alexion's executive officers or directors is continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between AstraZeneca and Alexion's executive officers, including who participated in all such communications, when they occurred and their content.  The Registration Statement further fails to disclose whether any of AstraZeneca's proposals or indications of interest mentioned

management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

41.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.     The omission of this information renders the statements in the "Background of the Merger" and "Interests of Alexion's Directors and Executive Officers in the Transaction" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

43.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Alexion will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

44.     Plaintiff repeats all previous allegations as if set forth in full.

45.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.   The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information Alexion's and AstraZeneca's financial projections, the data and inputs underlying the financial analyses performed by the Company's financial advisor BofA, and Company insiders' potential conflicts of interest.   The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

47.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

50.     Plaintiff repeats all previous allegations as if set forth in full.

51.     The Individual Defendants acted as controlling persons of Alexion within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Alexion, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

54.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Alexion stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Alexion, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Alexion stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  March 25, 2021                              **LONG LAW, LLC**

By:   */s/ Brian D. Long*
                                                           Brian D. Long (#4347)
                                                           3828 Kennett Pike, Suite 208
                                                           Wilmington, DE 19807
                                                           Telephone: (302) 729-9100
                                                           Email: BDLong@longlawde.com

                                                           *Attorneys for Plaintiff*